UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NIAN LIU,

                              Petitioner,

        – against –

JUDITH ALMODOVAR, *in her official capacity as Field Office Director of Enforcement and Removal Operations, New York City, Immigration and Customs Enforcement*; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; PAMELA BONDI, *in her official capacity as Attorney General of the United States*; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,

                              Respondents.

**OPINION & ORDER**

25 Civ. 9256 (ER)

RAMOS, D.J.:

      Nian Liu petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* Doc. 1. He alleges that his detention violates the Immigration and Nationality Act ("INA"), its implementing regulations, and the Due Process Clause of the United States Constitution. *See* Doc. 1 ¶¶ 41-49. Liu seeks to be released, or, in the alternative, to be provided with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days. *Id.* at 12. For the reasons explained below, the petition is GRANTED.[1]

**I. Background**

      Liu, a native and citizen of China, has continuously resided in the United States for over three years. Doc. 1 ¶ 40; Doc. 10 Ex. ¶ 3 ("Collado Decl."). He works as a barber in New York and regularly attends church services in Flushing. Doc. 1 ¶ 43. He has no criminal record. *Id.*

---

[1] Based on the petition, response, and supporting record, the Court concludes that the petition "present[s] only issues of law," and thus adjudicates it without a hearing. *See* 28 U.S.C. § 2243; *Tumba v. Francis*, No. 25-cv-8110 (LJL), 2025 WL 3079014, at *1 n.1 (S.D.N.Y. Nov. 4, 2025).

On March 26, 2022, Liu was stopped by a U.S. Customs and Border Patrol ("CBP") agent in or near Tecate, California and taken into custody. Collado Decl. ¶ 4. Two days later, he was served with a Notice to Appear ("NTA"). The NTA charged that Liu was subject to removal pursuant to the INA as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Doc. 9-1 at 1; Collado Decl. ¶ 6; *see* 8 U.S.C. § 1182(a)(6)(A)(i). The NTA also directed Liu to appear before an immigration judge for hearing at 26 Federal Plaza in New York City on June 15, 2022. Doc. 9-1 at 1; Collado Decl. ¶ 6.

That same day, CBP also served Liu with a "Warrant for Arrest of Alien." Collado Decl. ¶ 6; Doc. 9-2. The warrant described Liu as having "entered the United States at or near Tecate, California on March 26, 2022." Doc. 9-2. It also stated that Liu was "liable to be taken into custody" pursuant to § 236 of the INA. *Id.*

On April 21, 2022, CBP released Liu on his own recognizance, pursuant to § 236 of the INA and applicable federal regulations. Collado Decl. ¶ 8; Doc. 9-3 at 1. Liu appeared, as the NTA directed, before an immigration judge on June 15, 2022. At the hearing, Liu conceded that he was removable from the United States. Collado Decl. ¶ 8. He has also since, however, sought to prevent his removal through applying for asylum and withholding of removal. Collado Decl. ¶ 8; Doc. 1 ¶ 46. That application, which is currently pending, is next scheduled for a hearing on July 20, 2026.[2] Doc. 1 ¶ 46 & Exh. C.

In the three and a half years since Liu was released on his own recognizance, he has periodically reported to check-ins with Immigration and Customs Enforcement ("ICE") and updated the agency on his whereabouts via email.[3] Collado Decl. ¶¶ 9-13. After Liu contacted

---

[2] The government reports that this hearing will be rescheduled once Liu's case is transferred to the Immigration Court's detained docket, but provides no information regarding when the hearing will be rescheduled or how soon his next court date might be. Collado Decl. ¶ 18.

[3] Although a declaration from ICE Supervisory Detention and Deportation Officer Vanessa Collado notes that there are two instances where "ICE records do not reflect that [Liu] reported" to the agency on a scheduled check-in date, the government does not contend that Liu did not, in fact, report to the agency on those dates. Collado Decl. ¶¶ 11-12. Indeed, the record reflects that Liu reported as instructed. *See* Doc. 12-1 Exh. 1. Nor does the government contend that Liu presents any risk of failing to appear in future immigration proceedings.

ICE in May of this year, ICE directed him to report to the agency in person at 26 Federal Plaza on November 5, 2025. *Id.* ¶ 14; Doc. 1 ¶ 41. When Liu reported for his scheduled check-in, however, ICE canceled the April 21, 2022, order that released him on his own recognizance, arrested him, and served him with a new arrest warrant. Collado Decl. ¶¶ 14-15. The new warrant, like the previous one, stated it was authorized pursuant to § 236 of the INA. Doc. 9-5. After initially detaining Liu in processing space at 26 Federal Plaza, ICE subsequently transferred Liu to a detention facility in New Jersey that evening. Collado Decl. ¶¶ 14,16. A little over a week later, ICE transferred Liu, again, to a facility in Jonesboro, Louisiana, where he is currently being detained. *Id.* ¶ 17.

## II. Procedural History

While Liu was being held at 26 Federal Plaza on November 5, 2025, his counsel filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Doc. 1 ¶¶ 8, 11. Liu named as respondents the Executive Office for Immigration Review, along with ICE Field Office Director of Enforcement and Removal Operations for New York City Judith Almodovar, Secretary of Homeland Security Kristi Noem, and U.S. Attorney General Pamela Bondi, in their official capacities (collectively, "the government"). *Id.* ¶¶ 16-19. The government was served with the petition on November 13, 2025, and a certificate of service was filed with the Court on November 17, 2025. Doc. 3. On November 18, 2025, the Court ordered the government to respond by November 21, 2025.[4] Doc. 4. With Liu's consent, the government moved to extend its response deadline to November 25, 2025, which the Court granted. Doc. 6, 8. The government submitted its response on November 25, 2025. *See* Docs. 9-11. Liu filed a reply on November 28, 2025. Doc. 12.

## III. Legal Standard

Liu brings his petition pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution

---

[4] The order also directed Liu's counsel to serve the respondents with a copy of the order by November 19, 2025, and the respondents to promptly enter notices of appearance. Doc. 4.

or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

### IV. Discussion

Liu challenges his detention pursuant to (1) section 236 of the INA, 8 U.S.C. § 1226(a), and its implementing regulations, 8 C.F.R. §§ 236.1, 1236.1, 1003.19; and (2) the Due Process Clause of the United States Constitution, U.S. Const. amend. V. *See* Doc. 1 ¶¶ 41-49. The Court addresses challenge each in turn.

> a. *Liu is detained pursuant to 8 U.S.C. § 1226(a) and its implementing regulations.*

Liu's first ground for challenging his detention rests on two different provisions of the INA. He contends that, pursuant to 8 U.S.C. § 1226(a), he was entitled to a discretionary decision by immigration officials regarding whether he should be detained. Doc. 1 ¶¶ 5-6. He argues that that is so because, when he was arrested, he had already entered and had been living in the United States. *Id.* ¶¶ 26-39. And he contends that, contrary to that mandate, the government never made an individualized determination pursuant to § 1226(a), but rather detained him under a mandatory detention provision of the INA—8 U.S.C. § 1225(b)—that applies only at the border and ports of entry. *Id.* ¶¶ 3-5, 38. In other words, Liu's petition "turns principally on a question that dozens of other district courts have recently confronted: whether, as a person who has long been living in the United States after entering the country unlawfully, [he] is [currently] detained under 8 U.S.C. § 1225(b)(2)(A) or [he] is detained under 8 U.S.C. § 1226(a)." *Cardenas v. Almodovar*, No. 25-CV-9169 (JMF), 2025 WL 3215573, at *1 (S.D.N.Y. Nov. 18, 2025).

The Second Circuit and Supreme Court have not squarely addressed this issue. The Court agrees, however, with the great weight of authority among district courts in this Circuit and others that § 1226(a)—and not § 1225(b)—applies to individuals in Liu's position. *See id.* at *2 (noting that "there are scores of decisions—in this Circuit and beyond—on the Section 1226(a)

4

side of the split" and finding "only a dozen—all out of Circuit—[cases] that have adopted the Section 1225(b)(2)(A) position"). Put simply, "a noncitizen," like Liu, "who has entered the country, even illegally, and is apprehended by CBP after entry is not subject to the mandatory detention provision of Section 1225, and is instead subject to the discretionary detention provision of Section 1226." *Tumba v. Francis,* No. 25-CV-8110 (LJL), 2025 WL 3079014, at *5 (S.D.N.Y. Nov. 4, 2025).

That result is compelled, first and foremost, by the text of § 1225(b), which applies to an alien who is not only "an applicant for admission" but also "seeking admission" to the country.[5] 8 U.S.C. § 1225(b)(2)(A); *Grajales v. Commissioner of Internal Revenue*, 47 F.4th 8, 62 (2d Cir. 2022) ("[T]he best evidence of Congress's intent is the statutory text."). The government contends that the two phrases are synonymous, and thus that all "applicants for admission" are necessarily "seeking admission." Doc. 11 at 11-12. But, as courts in this Circuit and others have noted, the government's reading of § 1225(b) effectively reads the phrase "seeking admission" out of the statute, thus violating the "cardinal rule of statutory interpretation that 'every clause and word of a statute should have meaning,'" *Tumba*, 2025 WL 3079014, at *3 (quoting *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 432 (2023)), and the presumption that "different words and phrases [in a statute] should be accorded different meanings," *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025).

Indeed, the Court agrees with the courts that have concluded that "[n]ot all 'applicants for admission' are 'seeking admission.'" *Tumba*, 2025 WL 3079014, at *3; *see also, e.g.*, *Lopez Benitez,* 2025 WL 2371588, at *6. As Judge Subramanian persuasively explained in *J.G.O. v. Francis*, the term "applicant for admission" includes those who are merely present in the United States without admission, *J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at *3

---

[5] Section 1225(b)(2)(A) provides that "[s]ubject to [certain exceptions not applicable here], in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).

5

(S.D.N.Y. Oct. 28, 2025), while "admission," by contrast, is defined as "the lawful *entry* of [an] alien into the United States after inspection and authorization by [an] immigration officer," 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Given that "'seeking' is written in the present-progressive tense," it follows that "seeking admission" requires *more* than just presence—it "requires an alien to *continue* to want to *go into* the country." *J.G.O.*, 2025 WL 3040142, at *3. And the problem for the government is that individuals in the petitioner's position are not "seeking admission" to the country in that sense; they are already here. *Id.* It follows that, by its terms, § 1225(b)(2)(A) cannot apply.

This reading of § 1225(b)(2)(A) is also supported by the "context" of the INA's "overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 486 (2015). That context includes the exceptions to § 1225(b)(2)(A)'s mandate for crewmen, stowaways, and those "arriving on land," 8 U.S.C. § 1225(b)(2)(B)-(C), which are "suggestive of the type of person who's meant to be covered." *J.G.O.*, 2025 WL 3040142, at *4. By exempting these groups, it seems clear that Congress meant to limit the scope of § 1225(b)(2)(A) to those who are "seeking admission" to the country—that is, "those who are presenting themselves at the border, or who were recently apprehended just after entering." *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025); *see also Cuy Comes v. Deleon*, No. 25 CIV. 9283 (AT), 2025 WL 3206491, at *3 (S.D.N.Y. Nov. 14, 2025). The Court also considers it significant that the government's broad reading of § 1225(b)(2)(A) would render superfluous recent amendments to the INA aimed at expanding the scope of mandatory detention. *See Tumba*, 2025 WL 3079014, at *4 (explaining how the government's construction "would be entirely inconsistent with the Laken Riley Act," Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025)); *see also Gomes v. Hyde*, 2025 WL 1869299 (JEK), at *7 (D. Mass. July 7, 2025); *Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 WL 2829434, at *7 (E.D.N.Y. Oct. 5, 2025).

The Court finally notes that its construction comports with the Executive Branch's longstanding interpretation of the INA. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 386 (2024) (["T]he longstanding practice of the government—like any other interpretive

6

aid—can inform [a court's] determination of what the law is." (citation modified)). As the petition highlights, Doc. 1 ¶ 53, regulations contemporaneous to the relevant provisions explained that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323; *see Rodriguez v. Bostock*, No. 3:25-CV-05240 (TMC), 2025 WL 2782499, at *25 (W.D. Wash. Sept. 30, 2025). In addition, the Department of Homeland Security's ("DHS") own implementing regulations—issued just months after the enactment of the statute—have consistently treated an "applicant . . . seeking admission" as "roughly interchangeable" with "an arriving alien," *Martinez v. Hyde*, 792 F. Supp. 3d 211, 219 (D. Mass. 2025), which it defines as "an applicant for admission *coming or attempting to come* into the United States," 8 C.F.R. § 1.2 (emphasis added); *Rodriguez*, 2025 WL 2782499, at *25. "In other words, an 'arriving alien' is an 'applicant' who is also *doing* something: 'coming or attempting to come into the United States.'" *Martinez*, 792 F. Supp. 3d at 219. "This mirrors the text of section 1225(b)(2)(A), which applies where an individual is an 'applicant' who is also doing something: 'seeking admission.'" *Id.* And it comports with "DHS's long-standing interpretation . . . that [§] 1226(a) applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." *Id.* at 217 n.9 (quoting Transcript of Oral Argument 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)).

      In sum, the text, statutory context, and decades of Executive Branch practice all compel the same conclusion: "a noncitizen who has entered the country, even illegally, and is apprehended by CBP after entry is not subject to the mandatory detention provision of Section 1225, and is instead subject to the discretionary detention provision of Section 1226." *Tumba*, 2025 WL 3079014, at *5. Liu, therefore, was entitled to a discretionary detention decision pursuant to § 1226(a).

      In resisting this conclusion, the government cites to cases regarding the so-called "entry fiction." *See* Doc. 11 at 10. But "the entry fiction isn't relevant to this analysis" as it "dictates what *constitutional* rights are due to a noncitizen who is physically present in the United States,"

7

and the question here is statutory in nature. *J.G.O.*, 2025 WL 3040142, at *4. And, in any event, the fiction would not apply to Liu because it "stretches to noncitizens stopped at or near the border," and Liu "was arrested and detained in New York" long after and far from his initial entry years ago.[6] *Id.*

Nor is the Court persuaded by the government's seeming suggestion that Liu's 2022 arrest and detention legally prevented his entry and thus has always rendered him subject to mandatory detention pursuant § 1225(b). Doc. 11 at 11. That assertion, for one, is plainly contradicted by the record, which shows that, since his initial arrest in 2022, the government has consistently treated Liu as subject to § 1226. Doc. 9-1 at 1; Doc. 9-2; Doc. 9-5. Indeed, the NTA that the government first issued in 2022 explicitly indicated that Liu was *not* an "arriving alien," but rather an "alien present in the United States who has not been admitted or paroled." Doc. 9-1 at 1. The 2022 arrest warrant also explicitly indicated that Liu was "liable to being taken into custody" pursuant to § 1226—not, as the government now contends, § 1225. "The Court cannot credit Respondents' new position as to the basis for [Liu's] detention, which was adopted post hoc and raised for the first time in this litigation." *Lopez Benitez,* 2025 WL 2371588, at *5. And, "[i]n any event, [Liu's] initial arrest is not what is at issue in this case. It is his 2025 arrest, which occurred at a time when he was (and had long been) residing in the United States, and thus subject to § 1226(a)." *Id.* at *8. And the detention that flowed from that arrest, for reasons just explained, cannot have been subject to § 1225(b).[7]

---

[6] To the extent that government separately argues that its reading of § 1225 is required by Congress's attempt to distinguish between "those who effectuate lawful entry" and "those who illegally entered," Doc. 11 at 15, the Court disagrees for the reasons explained by Judge Cartwright in *Rodriguez v. Bostock*, No. 3:25-CV-05240 (TMC), 2025 WL 2782499, at *4 (W.D. Wash. Sept. 30, 2025) ("[T]he government 'err[s] in its analysis by identifying *one* of Congress's concerns in enacting [the Illegal Immigration Reform and Immigrant Responsibility Act] and then treating it as Congress's sole concern driving the statute.'" (quoting *Aceros v. Kaiser*, 25-CV-06924 (EMC), 2025 WL 2637503, at *11 (N.D. Cal. Sept. 12, 2025))).

[7] As in *Tumba*, the government "do[es] not argue that [it] changed the basis upon which [Liu] was released into the United States at some point after [he] was released on [his] own recognizance or before [his] arrest in this case." 2025 WL 3079014, at *5 n.3. But the Court agrees with Judge Liman that any such argument would itself "raise significant due process concerns." *Id.* (citing *Obeya v. Sessions*, 884 F.3d 442, 445 (2d Cir. 2018)).

### b. *Liu's constitutional due process rights were violated.*

As a threshold matter, the Court rejects the government's suggestion that Liu is not entitled to constitutional due process by virtue of his allegedly unlawful entry. Doc. 11 at 15-16; *see generally Munoz Materano v. Arteta*, No. 25 Civ. 6137 (ER), 2025 WL 2630826, at *12 (S.D.N.Y. Sept. 12, 2025). Thus, under the Due Process Clause, Liu was entitled to "notice of the case against him and [the] opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). Here, Liu received neither prior to his re-detention.

Nor does the government contend that Liu's most recent detention was predicated on any individualized determination regarding his risk of flight or danger to the community. *See Cuy Comes*, 2025 WL 3206491, at *4 (citing 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8)). "'In fact, nothing in the record reflects (1) who made the decision to detain [him], (2) when that decision occurred, (3) on what basis the decision to detain [him] was made, (4) whether there was any material change in circumstances with respect to [him] that triggered [his] detention, or (5) whether there was any sort of new policy in place that triggered [his] detention.'" *Tumba*, 2025 WL 3079014, at *6 (citation modified) (quoting *Lopez Benitez*, 2025 WL 2371588, at *11). And "[c]onsidering the complete absence of any reason for [Liu's] arrest under Section 1226, either in the record or in the briefing, this Court cannot conclude that [his] . . . re-detention is compliant with . . . the Due Process Clause." *Id.* at *7; *Lopez Benitez*, 2025 WL 2371588, at *9-*13 (coming to the same conclusion through applying the *Mathews v. Eldridge* balancing test); *Cuy Comes*, 2025 WL 3206491, at *4-*5 (same).

### c. *Liu is not required to exhaust administrative remedies.*

The government finally argues that, even if the Court concludes that Liu's detention is unlawful, the Court should not grant the writ because Liu has not exhausted his administrative remedies. Doc. 11 at 17-20. In support of this argument, the government highlights that "an alien detained pursuant to § 1226(a) may request a post-deprivation custody redetermination hearing (*i.e.*, a 'bond hearing') before an Immigration Judge." *Id.* at 18 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)).

9

"Although '[t]here is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention [in federal court],' as a 'prudential matter,' district courts have required 'administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus,'" *Cuy Comes*, 2025 WL 3206491, at *6 (first quoting *Araujo Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014); then quoting *Quintanilla v. Decker*, No. 21-cv-417 (GBD), 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021)). Courts may excuse this exhaustion requirement when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Id.* (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)).

Here, the Court agrees with the courts that have found, in identical contexts, that exhaustion is excused based on the first, third, and fourth exceptions. *See, e.g.*, *id.* (first and fourth exception); *Lopez Benitez*, 2025 WL 2371588, at *13-*14 (same); *Tumba*, 2025 WL 3079014, at *7-*8 (first and third exception). Put simply, "given the nature of the constitutional violation [Liu] sustained here—i.e., [the government's] failure to conduct any kind of individualized assessment before detaining him—any post-deprivation review by an immigration judge would be inadequate." *Lopez Benitez*, 2025 WL 2371588, at *14. And "there is no doubt that [Liu's] [p]etition raises a substantial constitutional question that cannot properly be adjudicated administratively." *Id.* The Court therefore concludes that exhaustion is not required. And for the reasons explained in *Lopez Benitez* and *Tumba*, Liu is thus entitled to release. *See id.* at *15; *Tumba*, 2025 WL 3079014, at *8-*9.

10

## V. Conclusion

For the reasons set forth above, Liu's petition is GRANTED.  Respondents are ORDERED to immediately release Liu from custody and certify compliance with the Court's order by filing an entry on the docket no later than December 3, 2025, at 12 p.m.[8]

Liu's counsel is instructed to submit its fee application and corresponding billing records to the Court by December 16, 2025.  Respondents are instructed to file any opposition by December 30, 2025.

It is SO ORDERED.

Dated:   December 2, 2025
         New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.

---

[8] While some courts have ordered the government to transport the petitioner back to the Southern District before release, *see Tumba*, 2025 WL 3079014, at *9 n.6 (citing cases), Liu has not requested that specific remedy, Doc. 1 at 12.  The Court, however, "would entertain any request from [him] to modify its Order to that effect after [he] has met and conferred with the [g]overnment." *Tumba*, 2025 WL 3079014, at *9 n.6.